WO                                                                                                          SH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Albert Vaughn Smith, | No.  CV 18-02657-PHX-MTL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Albert Vaughn Smith, who is currently confined in Arizona State Prison Complex (ASPC)-Eyman in Florence, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983.  (Doc. 106.)  Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 180), which Defendants oppose (Doc. 215).[1]  Defendants also move for summary judgment (Docs. 209, 217), and Plaintiff opposes the motions (Docs. 232, 236).[2]

**I.    Background**

In his two-count Complaint, Plaintiff alleges claims for unconstitutional conditions

---

[1] Also before the Court is Defendants' Motion to Strike several of Plaintiff's documents filed in support of his reply brief on the ground that Plaintiff's documents violate Local Rule 7.2(m)(2). (Doc. 242.) Because Plaintiff is proceeding pro se, the Court must avoid applying summary judgment rules strictly. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (courts must "construe liberally motions papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly"); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  As such, the Court will deny Defendants' Motion to Strike.

[2] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Docs. 211, 219.)

of confinement and failure to protect; Plaintiff alleges nearly the same facts in each count. (Doc. 106.) Relevantly, Plaintiff alleges that a "certified hit list" was found in the possession of a prisoner who as an active member of a "notorious prison gang" and that Plaintiff's name was on the list. (*Id.* at 5.) Defendants did not inform Plaintiff that his name was on the list or offer him protection, and Plaintiff was assaulted by members of that prison gang on May 25, 2018. (*Id.*) Plaintiff was subsequently moved to a mental health/suicide watch area, even though he was not a mental health prisoner, and Plaintiff remained in that housing area for at least 12 weeks during which he endured tortuous conditions including 24-hour artificial lighting and banging and yelling by seriously mentally ill prisoners who often smeared themselves and their cells with feces and urine and flooded their toilets, which contained waste matter, resulting in a stench in the area. (*Id.* at 8.) Plaintiff was denied cleaning supplies and outdoor recreation time. (*Id.*)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment claims for unconstitutional conditions of confinement (Count One) and failure to protect (Count Two) against Defendants former Arizona Department of Corrections (ADC) Director Ryan; Deputy Warden Kimble; Sergeants Kindig, Mooney, and Shaw; Special Security Unit (SSU) Officers Moore, Padilla, Quintero, Rowe, Medrano, and Chavez; and SSU Coordinator Lieutenant Reyna. (Doc. 105.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts

to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.     Exhaustion**

The Court will first address Defendants' argument that Plaintiff failed to exhaust the available administrative remedies.

    **A.     Exhaustion Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**B.     ADC Grievance Procedure**

At the time relevant to this action, Department Order (DO) 802, *Inmate Grievance Procedure*, effective October 16, 2016, set forth the procedures that inmates must follow to complete the prison administrative grievance process through the Director's level for medical and non-medical inmate grievances. (Doc. 210 (Defs.' Statement of Facts) ¶ 107.) Under DO 802, a prisoner must first try to resolve his complaint through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or by submitting an Inmate Informal Complaint Resolution, Form 802-11. (*Id.* ¶ 110.)

If a prisoner is unable to resolve his complaint through informal means with responsible staff, he may submit an informal complaint on an Inmate Informal Complaint

1 Resolution Form to the Correctional Officer (CO) III in their respective unit within ten
2 workdays from the date of the action that caused the complaint. (*Id.* ¶ 111.) The prisoner
3 must attach copies of all documentation to support his complaint. (*Id.*) The CO III
4 investigates the informal complaint, attempts to resolve it informally, and provides a
5 response to the inmate within 15 workdays of its receipt. (*Id.*)

6 If the prisoner's complaint cannot be resolved informally, the inmate may submit a formal inmate grievance to the unit CO IV Grievance Coordinator within five workdays from the date the inmate receives the CO III's response to his informal complaint. (*Id.* ¶ 112.) Within 15 workdays following the receipt of the formal grievance, the Deputy Warden issues a written response to the prisoner. (*Id.*)

11 If the prisoner wishes to appeal the Deputy Warden's response, he may appeal to the Director via the Grievance Coordinator within five workdays of receipt of the Deputy Warden's response. (*Id.* ¶ 114.) Prisoners may not file an appeal to the Director until the grievance procedure within their assigned unit and institution has been exhausted. (*Id.* ¶ 115.) Within 30 calendar days of receipt of the inmate grievance appeal to the Director, the Central Office Appeals Officer prepares a response and submits it to the Director for his or his designee's signature. (*Id.* ¶ 116.) The Director's response is final and constitutes an exhaustion of all remedies within the ADC for standard grievances. (*Id.* ¶ 117.)

19 If a prisoner does not receive a response from an ADC official within the time limits set in the Inmate Grievance Procedure, the prisoner may proceed to the next review level. (*Id.* ¶ 118.) The time to proceed to the next review level begins to run the day after a response was due back. (*Id.*)

### C. Plaintiff's Grievance Records

Plaintiff asserts that he "filed 3 informal resolutions on 5/29/18 to [CO III] Guevarra" and that he never received a response to any of them. (Doc. 233 (Pl. Decl. ¶ 24).) Plaintiff asserts that he attached carbon copies of these informal complaints to his subsequent grievances. (*Id.* ¶ 27.) Plaintiff did not provide copies of any of the informal complaints to the Court.

On June 15, 2018, Plaintiff submitted an Inmate Grievance, which stated:

> I am a level 4 closed custody prisoner (G.P.) housed in a level (5) max custody facility where on 5/25/18 I was violently assaulted by a level (5) max custody inmate whom I should never have been housed around in the first place. This assault resulted in me receiving a broken jaw in (2) different spots. Now I am housed (still as a closed custody prisoner). In a level (5) max custody mental health watch pod where I was told I'd be for approximately 6-8 weeks minimum. I need to be sent to Central Unit Medical Housing Unit or Tucson or Morey. Where I can receive proper medical treatment and privileges as I am a closed custody inmate and not on L.O.P. But yet I am not being allowed to use the phone to contact my family nor am I being allowed to order envelopes writing paper to write my family. I am not being allowed to have my personal property in my cell or go to recreation all of which every other closed custody inmate housed in a medical housing area is allowed to have – I also     have an open & ongoing legal case (Federal Habeas) & need to be able to file & respond to motions rapidly which I cannot possibly do without having my property (I.F.) legal work for 6-8 weeks.  Policy states all inmates are allowed at least 3 recreational periods a week and where I am currently housed I'm not being afforded these privileges which is a complete violation of my prisoners [sic] rights and the legal holdings of the Parsons v. Ryan settlement. Me being here on medical watch I am subjected to the same feeding as an inmate on suicide watch 2) cold sack lunch meals per day where me being a level 4 closed custody inmate I should be receiving 2 hot tray meals and a 1) sack cold lunch being housed in this level 5 max custody mental health watch area for purposes of medical watch as a level 4 custody level is subjecting me to unfair & impartial treatment constituting a level of cruel and unusual punishment.
>
> Proposed Resolution: My resolution is to be transferred to a closed custody medical housing unit @ Central Unit, Tucson or Morey.  Have all my personal property brought to me & placed in my cell (ASAP).  Have my phones switched over by visitation so that I may make outgoing calls - be allowed to utilize the recreational enclosures & be afforded all other privileges as any other non L.O.P. closed custody G.P. prisoner. I have attempted to resolve this issue informally by contacting CO 3 & have yet to receive a response so am filing a grievance in compliance with grievance policy.

- 6 -

(*Id.* ¶ 119.)

The SMU Grievance Coordinator returned the June 15, 2018 Inmate Grievance to Smith unprocessed because he did not attach a copy of his Inmate Informal Complaint Resolution, Form 802-11, as required by DO 802. (*Id.* ¶ 120.) Plaintiff did not appeal or file any further documentation related to the June 15, 2018 Inmate Grievance. (*Id.* ¶ 121.)

On June 18, 2018, Plaintiff filed an Inmate Grievance to the Grievance Coordinator complaining that upon his return from the hospital, he was placed in the mental health/suicide watch pod in a cell that was covered in blood and feces, and his request for cleaning supplies or for the cell to be cleaned was denied. (Doc. 235-2 at 154.) Plaintiff also complained that the lights in that pod were constantly illuminated, and his request for them to be turned off at night was denied by Defendant Shaw. (*Id.*) Plaintiff claimed that he was being denied outdoor recreation time. (*Id.*) Plaintiff also claimed that he filed an informal complaint on May 29, 2018 that went unanswered and that he had attached it to the Inmate Grievance. (*Id.*) The Inmate Grievance was signed as received by a CO III with badge number 2248. (*Id.*)[3] The Inmate Grievance does not have a case number and was not signed or dated by the Grievance Coordinator. (*Id.*) The "Action taken/Attempts at Resolution" portion of the Inmate Grievance that was supposed to be completed by an ADC staff member is also blank, unsigned, and undated. (*Id.*)

On July 9, 2018, Plaintiff submitted an Inmate Grievance Appeal to Defendant Deputy Warden Kimble. (*Id.* at 156.) The contents of the appeal are mostly illegible, but in the portions that are readable, Plaintiff indicates that he had not received a response to his June 18, 2018 grievance regarding his dirty cell, lack of cleaning supplies, and constant cell illumination. (*Id.*) There is a notation that the appeal was received by CO II Loza on July 9, 2018. (*Id.*)[4] The appeal was not signed or dated by the Grievance Coordinator, and

---

[3] The CO III's name is illegible.

[4] Defendants assert that "[a] review of the SMU Roster shows that CO II Loza was not assigned to work in the SMU" on July 9, 2018, and "[t]he July 8, 2018, to July 10, 2018, Correctional Service Logs do not show CO II Loza being assigned to A40 or present in the area." (Doc. 210 ¶¶ 124–25.) But Defendants did not provide a copy of the relevant SMU Roster, and according to Defendants' evidence, the Correctional Service Logs are

- 7 -

it does not have a case number. (*Id.*) The "Response to Inmate by" portion that is supposed to be completed by an ADC staff member is blank, and the appeal was not signed or dated by a staff member. (*Id.*)

On July 30, 2018, Plaintiff filed another Inmate Grievance appeal, this one addressed to Defendant Ryan, complaining about his dirty cell, lack of cleaning supplies, constant cell illumination, and lack of outdoor recreation. (*Id.* at 158–160.) There is a notation that the appeal was received by CO Owens, but the appeal was not assigned a case number or signed by the Grievance Coordinator. (*Id.* at 158.) The "Response to Inmate by" portion that is supposed to be completed by an ADC staff member is blank, and the appeal was not signed or dated by a staff member. (*Id.*)

### D. Discussion

Defendants have presented evidence that there was an administrative remedy available to Plaintiff as outlined in DO 802. However, the parties have presented conflicting evidence as to whether Plaintiff completed each step of the DO 802 grievance process with respect to his conditions of confinement and failure to protect claims.

The record does not show that Plaintiff properly exhausted his either of his claims according to the requirements of DO 802. First, assuming Plaintiff filed three informal complaints to CO III Guevarra on May 29, 2018, the Court is unable to ascertain whether the contents of the informal complaints were sufficient to provide notice to prison officials concerning the issues for which Plaintiff sought a resolution. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.2009) ("the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution"). Plaintiff did not provide the Court with copies of the informal complaints or provide any specific details regarding the contents of the informal complaints. Absent specific evidence regarding the contents of the informal

---

used to record "the activity in the unit, including security checks, the entry of staff, medical or mental health professionals, inmate movement, and the activation of the Incident Command System." (*Id.* ¶ 58.) There is no indication that the service logs are intended to function as a daily roster of employees who were assigned to a particular unit on a given day or that not being mentioned in a service log necessarily means that an employee was not assigned to a particular unit. Accordingly, construing the facts in Plaintiff's favor, the Court will assume that Plaintiff submitted the Inmate Grievance Appeal to CO II Loza.

complaints, Plaintiff has not presented sufficient evidence to show that he satisfied the first step of the grievance process with respect to his claims in this action.

Moreover, the only grievance document that mentions the events underlying Plaintiff's failure to protect claim is the June 15, 2018 Inmate Grievance. But it is undisputed that the June 15, 2018 Inmate Grievance was returned unprocessed and that Plaintiff did not pursue this particular grievance any further. (Doc. 210 ¶ 121; Doc. 235 at 6 (indicating no dispute as to Defendants' statement of facts paragraphs 107–121).) There is no evidence in the record that Plaintiff filed any other grievances complaining about his inclusion on a gang's hit list or the staff's purported failure to protect him from a subsequent assault.

Even assuming Plaintiff submitted another Inmate Grievance on June 18, 2018—which only mentioned the circumstances surrounding his conditions of confinement claim—to CO III badge number 2248, the undisputed evidence shows that Plaintiff did not properly appeal this grievance. DO 802 clearly states that grievance appeals must be addressed to the ADC Director, but Plaintiff improperly addressed his July 9, 2018 Inmate Grievance Appeal to Defendant Kimble, who was a Deputy Warden, not the ADC Director. (Doc. 235-2 at 156.) To properly exhaust, a prisoner must use "all steps that the agency holds out," and must do so properly. *Ngo*, 548 U.S. at 90. Thus, Plaintiff's grievance appeal that is addressed to an improper official does not comport with the DO 802 grievance process and did not suffice to exhaust his conditions of confinement claim. Exhaustion of DO 802 requires Plaintiff to address his grievance documents to the correct personnel. *See Crane v. Deluna*, No. 1:03–cv–06339–YNP PC, 2009 WL 3126279, *3 (E.D. Cal. Sept. 3, 2009) (plaintiff failed to exhaust his claim when he addressed his grievance appeal to the wrong prison official); *see also Ngo*, 548 U.S. at 90 ("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").

Finally, Plaintiff's July 30, 2018 Inmate Grievance Appeal does not mention the events underlying the failure to protect claim, and the appeal also failed to exhaust the

conditions of confinement claim. The PLRA mandates that an inmate must exhaust administrative remedies *before* filing a lawsuit invoking 42 U.S.C. § 1983; exhausting administrative remedies during the course of the lawsuit does not comply with the requirement. *Vaden*, 449 F.3d at 1050-51; *McKinney v. Carey*, 311 F.3d 1198, 1120-21 (9th Cir. 2002). The statute itself states that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted." 42 U.S.C. § 1997e(a).

Assuming Plaintiff submitted an Inmate Grievance Appeal on July 30, 2018 regarding his conditions of confinement claim, pursuant to DO 802, the Central Office Appeals Officer had 30 calendar days to prepare a response and submit it to the Director for signing. Thus, the Central Office/ADC Director had until August 29, 2018 to respond to Plaintiff's appeal. But Plaintiff filed his original Complaint in this action—which included the conditions of confinement claim against Defendants Shaw, Mooney, Kindig, Kimble, and Ryan—on August 21, 2018, before the Central Office's 30-day response deadline had expired. (Doc. 1.) Thus, Plaintiff was still awaiting a grievance appeal response when he filed his original Complaint and therefore failed to satisfy the PLRA requirement that a prisoner fully exhaust the grievance process before filing suit. *See Cano v. Taylor*, 739 F. 3d 1214, 1220 (9th Cir. 2014) (holding that the date of filing an amended complaint can be used in determining whether exhaustion had occurred before filing the claim for claims not pleaded in the initial complaint, but the date of the amended complaint does not apply to unexhausted claims brought in the initial complaint).

Accordingly, the action will be dismissed for failure to exhaust the available administrative remedies, and the Court will not address Defendants' arguments regarding the merits of Plaintiff's claims or qualified immunity.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Summary Judgment (Doc. 180), Defendants' Motions for Summary Judgment (Docs. 209, 217), and Defendants' Motion to Strike (Doc. 242.)

(2) Defendants' Motion to Strike (Doc. 242) is **denied**.

(3) Plaintiff's Motion for Summary Judgment (Doc. 180) is **denied**.

(4) Defendants Kimble, Kindig, Mooney, Ryan, and Shaw's Motion for Summary Judgment (Doc. 209) is **granted**. Plaintiff's conditions of confinement claim and Defendants Kimble, Kindig, Mooney, Ryan, and Shaw are **dismissed** for failure to exhaust the available administrative remedies.

(5) Defendants Moore, Padilla, Quintero, Reyna, and Rowe's Motion for Summary Judgment (Doc. 217) is **granted**. Plaintiff's failure to protect claim and Defendants Moore, Padilla, Quintero, Reyna, and Rowe are **dismissed** for failure to exhaust the available administrative remedies.

(6) The Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 12th day of March, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge